IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-02423-RBJ

SUZANNE FABER, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

TOWNSEND FARMS, INC., an Oregon corporation doing business in Colorado and
PURELY POMEGRANATE, INC.,

    Defendants.

---

ORDER

---

Plaintiff is one of many people allegedly exposed to Hepatitis A after consuming a fruit product called Townsend Farms Organic Antioxidant Blend ("antioxidant blend"). Townsend Farms, an Oregon corporation, is the manufacturer of the antioxidant blend and one of the defendants in this case. The other defendant is Purely Pomegranate, Inc., a California corporation and the company that arranged for the importation of the pomegranate seeds from a supplier in Turkey. Purely Pomegranate argues that this Court lacks personal jurisdiction over it. I agree and grant its motion to dismiss. [ECF No. 25.]

### I.    Background

In the spring and summer of 2013, state and federal public health officials were confronted with an outbreak of Hepatitis A across the United States, sickening people in ten states. Ultimately the Centers for Disease Control and Prevention ("CDC") traced the outbreak to pomegranate seeds imported from Turkey. [ECF No. 30, Ex. 1.] The virus was tracked

specifically to Townsend Farms Organic Antioxidant Blend, and reportedly at least 25 people in Colorado became ill from the disease. [ECF No. 30, Ex. 3] Investigators apparently narrowed the source of the contaminated seeds even further, concluding that the "vehicle for the hepatitis A virus was a common shipment of pomegranate seeds from Goknur Foodstuffs Import Export Trading to Purely Pomegranate." [ECF No. 30 at 3 (citing Ex. 2).] In other words, Purely Pomegranate, for a fee, arranged for Goknur (in Turkey) to ship the seeds to Townsend (in Oregon).

Once Townsend received the allegedly contaminated seeds, it used them to manufacture its antioxidant blend, which was then distributed nationally including to supermarkets in Colorado. It is possible that other manufacturers received portions of the same shipment from Turkey. [*See, e.g.*, ECF No. 30 at 4 referencing Scenic Fruit Company.] After the discovery of the source of the contamination, the Federal Food and Drug Administration ("FDA") placed the Turkish supplier on a special alert, and Townsend Farms initiated a voluntary recall of its antioxidant blend.

Because the matter is before the Court on a motion to dismiss for lack of personal jurisdiction, some facts about Purely Pomegranate's business will be helpful. Purely Pomegranate is a California corporation with its principal place of business in Dana Point, California. [Klein Decl., ECF No. 25, Ex. B ¶ 2.] The company maintains no offices in Colorado, has no financial accounts in Colorado, has no employees or agents for service of process in Colorado, does not own or rent any property in Colorado, pays no taxes in Colorado, is not licensed to do business in Colorado, and did not ship the allegedly contaminated seeds to Colorado. *Id.* ¶¶ 5-8. In short, it has hardly any connection to Colorado besides the facts that 1) Townsend used Purely Pomegranate's seeds in a product that Townsend distributed in Colorado,

and 2) Purely Pomegranate has a single, former customer in Colorado who received three shipments of a product not at issue in this litigation. *Id.* ¶ 8. The sales to the former customer amounted to less than one percent of Purely Pomegranate's "business" at the time. *Id.*

Neither party alleges that Purely Pomegranate ever physically took control or possession of the pomegranate seeds or altered them in any way. And neither party alleges that Purely Pomegranate shipped the allegedly contaminated seeds to Colorado or caused the seeds to be shipped there. Ms. Faber does, however, argue that Purely Pomegranate knew or should have known that its product would end up in many states across the country, including Colorado.

Plaintiff initially filed this case in state court on June 11, 2012. On July 23, 2013, she filed her First Amended Complaint adding Purely Pomegranate as a defendant. Purely Pomegranate then filed a notice of removal which was granted by this Court on October 30, 2013. Plaintiff filed her Second Amended Complaint on the same day. [ECF No. 23.] Proceedings in this case were stayed briefly pending a decision of the United States Judicial Panel on Multidistrict Litigation on whether to consolidate this case with several other similar cases throughout the country. That stay was lifted on June 4, 2014 when the Panel denied the transfer motion. [ECF No. 52.]

## II. Discussion

### a. Standard of Review.

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that burden can be met with a prima facie showing." *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011). The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor. *Id.* However,

the allegations in the complaint are only taken as true to the extent that they are uncontroverted by defendant's affidavits. *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis original). Both the Tenth Circuit and the Colorado Supreme Court have held that "the Colorado long-arm statute extends jurisdiction to the greatest extent permitted by due process . . . ." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 91 (10th Cir. 2012). Thus, only one inquiry is required, because "we necessarily address the requirements of the long-arm statute when we engage in constitutional due process analysis." *Id.* (quoting *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005)).

When analyzing whether a court has personal jurisdiction over a nonresident defendant, it must consider whether the defendant has "'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008). "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state." *Id.* at 1071.

There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. A forum state may exercise general jurisdiction when the nonresident defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16 (1984). These contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).  In the absence of continuous and systematic contacts the forum court may still exercise specific jurisdiction where the nonresident "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," and the action arises out of those activities.  *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

The United States Supreme Court recently examined the concept of specific jurisdiction in products liability cases, and a majority of the Justices rejected the idea that mere foreseeability that a product will end up in a state, without purposeful targeting of that state, could constitute "purposeful availment" of the forum.  *J. McIntrye Machiner, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788-90 (2011) (plurality opinion) ("Here the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant."); *id.* at 2792 (Breyer, J., concurring) ("Here, the relevant facts found by the New Jersey Supreme Court show no 'regular . . . flow' or 'regular course' of sales in New Jersey; and there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else.").  Finally, when exercising general or specific jurisdiction, the Court must also ensure that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Washington Office of Unemployment Comp. and Placement*, 326 U.S. 310, 323 (1945).

Neither party has requested an evidentiary hearing on this motion.  For that reason and because the relevant facts appear to be undisputed, the Court finds that an evidentiary hearing is not necessary to a determination of the issues.[1]  I now turn to the law's application to the facts of this case.

---

[1] Ms. Faber has requested additional discovery on the topic of personal jurisdiction over Purely Pomegranate.  She has not, however, suggested how additional discovery will be helpful on this issue.  She has pointed to no facts nor has she advanced any theories about Purely Pomegranate's activities that suggest there is additional, heretofore undisclosed evidence that could help her make out a prima facie

### b. Colorado's Long-Arm Statute

As explained above, Colorado's long-arm statute authorizes the state's courts to exercise personal jurisdiction to the maximum extent allowed by federal due process. *Grynberg*, 490 F. App'x at 91; *see also* COLO. REV. STAT. § 13-1-124(1); *Lichina v. Futura, Inc.*, 260 F. Supp. 252, 254 (D. Colo. 1966); *Fleet Leasing, Inc. v. District Court of Denver*, 649 P.2d 1074, 1078 (Colo. 1982). Ms. Faber argues that the basis for the Court's personal jurisdiction over Purely Pomegranate can be found in C.R.S. § 13-1-124(1)(b) which authorizes specific jurisdiction over a person or agent engaging in "[t]he commission of a tortious act within this state." She then cites several cases from Colorado state courts purportedly holding that this long-arm statute authorizes specific jurisdiction over non-residents committing acts in another state that cause injury in Colorado. Many of these cases apply some variation of a "stream of commerce" theory of personal jurisdiction. *See, e.g.*, *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 678 (Colo. 2010) (finding personal jurisdiction over a defendant who committed a tortious act outside Colorado causing injury in Colorado where the defendant purposefully availed himself of the forum state through "hundreds of email and telephone communications" among other transactions); *Etchieson v. Cent. Purchasing, LLC*, 232 P.3d 301, 307 (Colo. App. 2010) (finding personal jurisdiction where the foreign defendant did "something more" than simply place its product in the stream of commerce by manufacturing, packaging, and advertising the finished product that ended up in Colorado); *Vogan v. Cnty. of San Diego*, 193 P.3d 336, 339 (Colo. Ct. App. 2008) (finding personal jurisdiction where defendant availed itself of Colorado by attempting to garnish plaintiff's wages in Colorado); *Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 15 (Colo. Ct. App. 2004)

---

case of personal jurisdiction. Without something more to suggest the utility of discovery, the Court declines to authorize it.

(finding personal jurisdiction under the "doing business" section of the long-arm statute where defendants "directed numerous representations" to plaintiff in Colorado).

Purely Pomegranate argues that all of these cases are distinguishable from the instant case. Even accepting that there are some factual differences, the fact remains that each of these cases arguably included evidence of purposeful availment that is completely lacking in the instant case. Moreover, each of these cases was decided before the Supreme Court's decision in *Nicastro.*

In the end, whether these cases are on-point or not is a question this Court need not answer. After all, a plaintiff's burden of demonstrating personal jurisdiction includes establishing both that "(1) jurisdiction is proper under the laws of the forum state and (2) the exercise of jurisdiction does not offend due process." *Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001). Therefore, while I may assume without deciding that Colorado's long-arm statute authorizes personal jurisdiction over a defendant who allegedly engaged in a tortious act outside of Colorado but caused injury within Colorado, I must nonetheless independently verify whether such an exercise of jurisdiction would comport with federal due process standards. *See Grynberg*, 490 Fed. App'x at 99-100 (noting that "it is federal law, not Colorado's interpretation of it, that must ultimately determine whether the exercise of personal jurisdiction comports with due process requirements"). It is to this second inquiry that I now turn.

    c. **<u>Federal Due Process Minimum Contacts</u>**

        i. **<u>General Jurisdiction</u>**

The Court cannot exercise general jurisdiction over Purely Pomegranate. Ms. Faber's response to the motion to dismiss appears to be entirely focused on demonstrating *specific*

jurisdiction, but she does make reference to a prior, unrelated interaction between Purely Pomegranate and a Colorado consumer. It is theoretically possible that she included that reference in an attempt to prove such continuous and systematic contacts as required for general jurisdiction. In any event plaintiff's proffer of a single, unrelated commercial interaction and the fact that Purely Pomegranate should have known that the seeds it sold to Townsend might end up in Colorado are insufficient to demonstrate such continuous and systematic contacts that the defendant is essentially "at home" in Colorado. *Cf. Goodyear*, 131 S.Ct. at 2851.

### ii. Specific Jurisdiction

While Purely Pomegranate's connection to Colorado is too tenuous to give this Court general jurisdiction over the company specific jurisdiction could exist if Purely Pomegranate "purposefully directed its activities at the state's residents, [and] if the cause of action arises out of those activities." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (internal quotation marks omitted). The *Nicastro* case is closely analogous to the facts at hand. In that case, a UK-based manufacturer of machinery sold its wares to a distributer who then resold them in several states including New Jersey. The plaintiff, Mr. Nicastro, worked at a New Jersey business where he was injured by the equipment. Mr. Nicastro brought a personal injury action in New Jersey's state courts against the UK-based manufacturer. He based his theory of personal jurisdiction on the fact that the manufacturer, while it might lack minimum contacts with New Jersey, nevertheless tailored its products for the broader U.S. marketplace and should have known that some of its machinery would end up in New Jersey. The U.S. Supreme Court, in a divided opinion overturning the New Jersey Supreme Court, concluded that such a theory of foreseeability cannot satisfy the minimum contacts analysis. A four-Justice plurality and two Justices concurring agreed that even under a relatively relaxed stream of commerce theory of

8

jurisdiction there must be some facts evincing purposeful availment or purposeful targeting of the forum state. *Nicastro*, 131 S. Ct. at 2788-90 (plurality opinion); *id.* at 2792 (Breyer, J., concurring).

Ms. Faber made no attempt to distinguish *Nicastro* in her opposition to the motion to dismiss. She offers an unsupported legal conclusion that "Pomegranate intentionally availed itself of the channels of interstate commerce, seeking to distribute its product in a number of states other than California, including Colorado." [ECF No. 30 at 2.] Aside from that, the Court can find no facts in the complaint or in the brief suggesting that Purely Pomegranate engaged in a "regular flow" or "regular course" of dealing with Colorado or did anything else suggesting it targeted Colorado. Purely Pomegranate has no offices or employees in Colorado, does not pay taxes in Colorado, does not advertise in Colorado, and did not engage in any commercial transactions with the plaintiffs in this case. Therefore the Court cannot find "something more" suggesting that personal jurisdiction would be appropriate in this case. *Nicastro*, 131 S.Ct. at 2792 (Breyer, J., concurring).[2]

### III. Conclusion

Therefore Purely Pomegranate's motion to dismiss [ECF No. 25] is GRANTED.

DATED this 26th day of June, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[2] Because Ms. Faber cannot demonstrate a factual basis for general or specific jurisdiction over Purely Pomegranate, I do not need to address the additional requirement that jurisdiction comport with traditional notions of fair play and substantial justice. *Cf. Int'l Shoe*, 326 U.S. at 323.